UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| OSVALDO FONTECCHIO | : | |
| Debtor | : | Bankruptcy No. 03-14838F |
| JANIS FONTECCHIO | : | |
| Plaintiff | : | |
| v. | : | |
| OSVALDO FONTECCHIO | : | |
| Defendant | : | Adversary No. 04-0490 |

..............................................

MEMORANDUM

..............................................

Plaintiff Janis Fontecchio filed the above-captioned adversary proceeding seeking a determination that her prepetition claim against the debtor, Osvaldo Fontecchio, in the amount of $22,500 is nondischargeable. Although the complaint itself does not identify the basis for the relief sought, at trial plaintiff's counsel asserted that Ms. Fontecchio was relying upon 11 U.S.C. § 523(a)(5) and (a)(15).

The debtor has filed an answer in opposition to the nondischargeability complaint. In his post-trial memorandum, he contends that all but $9,000 of the claim is dischargeable.

Although this adversary proceeding involved an extensive number of hearings,[1] only the following limited facts relevant to the dischargeability issue were proven.

I.

The plaintiff and the debtor were formerly married. They separated in 1997, and Mrs. Fontecchio thereupon sought support. See generally Calabrese v. Calabrese, 452 Pa. Super. 497, 503 (1996) ("The function of support is not to punish the payor spouse, but to fix an amount which is reasonable and proper for the comfortable support and maintenance of the spouse in need."). In February 1998, the debtor filed a divorce action. The debtor is an attorney, and at this time earned an annual income of

---

[1]This bankruptcy case was commenced under chapter 7 on March 28, 2003 and closed on August 21, 2003. On March 11, 2004, the plaintiff filed a motion to reopen the case under section 350(b) in order to assert her nondischargeability claim. For reasons articulated in open court, and with the consent of the debtor, this case was reopened. Thereafter, the plaintiff filed the instant complaint and the debtor filed his answer in opposition thereto.

Thereafter, trial commenced and both parties appeared to conclude their evidentiary record. The trial was adjourned, however, to permit settlement discussions. Prior to the resumed trial date, the parties reported that this adversary proceeding was settled. In accordance with Local Rule 7041-2, I issued an order directing that any necessary motion to approve a settlement or any settlement stipulation be filed within thirty days, or the adversary proceeding might be dismissed for lack of prosecution. When no action was taken by either party within the thirty day period, I entered an order dismissing the proceeding.

The plaintiff then filed a timely motion for reconsideration, which motion was opposed by the debtor. At the hearing on that reconsideration motion, neither party asserted that they had reached an enforceable settlement; rather, each blamed the other for not signing their respective versions of the settlement agreement.

For reasons explained in an order dated December 21, 2004, the dismissal order was vacated and trial was ordered to resume. At the resumed trial, debtor's counsel moved to have his case-in-chief reopened to present evidence relating to 11 U.S.C. § 523(a)(15). That motion was granted and additional evidence was offered.

Both parties were then afforded the opportunity to submit post-trial submissions.

approximately $160,000. During the divorce proceeding, Mrs. Fontecchio sought alimony pendente lite.[2]

The evidence suggests that on July 31, 1998, Mrs. Fontecchio obtained a support order against the debtor. Ex. W-2. When the debtor was subsequently terminated from his employment, this support obligation may have been modified.

On April 3, 2002, a hearing was held in state court in connection with the pending divorce litigation. Ex. W-1. At this hearing, the parties reached an oral settlement agreement and in accordance therewith the state court issued a Divorce Decree. Ex. R-1. The terms of the settlement accord were placed on the record during this state court hearing and expressly incorporated into the Divorce Decree.[3]

---

[2] "Alimony pendente lite" is "[a]n Order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa. C.S.A. § 3103.

[3] The Divorce Decree states:

> AND NOW, this 3rd day of April, 2002, the Court by virtue of the authority vested in it by law, DECREES that Osvaldo Fontecchio and Janis M. Hoffing Fontecchio are hereby divorced from the bonds of matrimony, and the said parties shall be at liberty to marry again.
>
> AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the terms, provisions and conditions of a certain property settlement agreement between the parties dated April 3, 2002 and attached hereto, are hereby incorporated in this Decree and Order by reference as fully as though the same were set forth herein at length. Said agreement shall not merge with, but shall survive this Decree and Order.

Ex. R-1.

3

Summarizing the terms of their settlement agreement, the debtor's divorce counsel stated in open court on April 3, 2002:

> The agreement is that my client [the debtor] will pay the sum of $22,500 to Miss Fontecchio. That payment will be made through a QDRO[4] from his 401k plan, and it's also agreed that each of them will keep any assets in his or her possession. Also, any debts incurred during the marriage, including credit card debts, utilities, anything else of any nature, are to be the responsibility of Miss Fontecchio. She shall hold Mr. Fontecchio harmless and indemnify him from those debts, and it's also agreed that there are pending petitions regarding APL [alimony pendente lite], that they shall all be withdrawn with prejudice.

Ex. W-1, at 27.

In furtherance of this settlement, the debtor drafted a document regarding the proposed QDRO and sent it to the plaintiff for her approval. Mrs. Fontecchio declined to sign the debtor's QDRO document because she construed its terms as holding her responsible for paying the tax penalty associated with the withdrawal of funds from

---

[4] A "QDRO" or "Qualified Domestics Relations Order" is "one of the few exceptions" to the "broad preemption of state laws which relate to employee benefit plans" under the Employee Retirement Income Security Act ("ERISA"). Smith v. Estate of Smith, 248 F. Supp. 2d 348, 354 (D.N.J. 2003). "As a general rule under ERISA, pension plan benefits are neither assignable nor alienable." Id. A narrow exception to this rule permits the assignment or alienation of benefits under a state-issued QDRO. Id. See also Winters v. Kutrip, 47 Fed. Appx. 143, 146-47 (3d Cir. 2002) ("ERISA has an anti-alienation provision which, with one narrow exception, precludes the assignment of a participant's interest in a covered plan. That narrow exception is a QDRO.").

"With a QDRO, a portion of an employee's interest in a 401k may be transferred for the benefit of a former spouse[.]" Winters v. The Investment Savings Plan for Employees of Knight-Ridder, Inc., 174 F. Supp. 2d 259, 261 (E.D. Pa. 2001). "The QDRO provisions protect those persons who, often as a result of a divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income." Smith, 248 F. Supp. 2d at 354 (quoting Boggs v. Boggs, 520 U.S. 833, 854 (1997)).

the debtor's 401(k) account.[5]  Nevertheless, the debtor withdrew $22,500 from his 401(k) account and deposited these funds into a bank account with First Union Bank.

There was no evidence offered concerning the amount remaining in the debtor's 401(k) plan after this withdrawal.  The debtor did testify that the 401(k) plan was subsequently terminated.  Presumably, the debtor received the remainder of the funds from his 401(k) plan at that time; however, no evidence was submitted regarding the debtor's disposition of these funds.  Moreover, the debtor testified that he currently has no pension plan with his current employer.

On September 28, 2003, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  He testified that he disclosed on his bankruptcy schedules that there was $22,500 held on deposit at the First Union Bank.[6]   He further stated that during the pendency of his bankruptcy case,  he refrained from making any withdrawals from this bank account.

---

[5]The debtor suggests that, as there is no signed QDRO agreement, no QDRO exists.  Whether or not there is a QDRO,  there is no dispute that the plaintiff holds a prepetition claim against the debtor.  That claim arises from the parties' April 2002 settlement agreement, incorporated in the Divorce Decree,  by which the debtor promised to pay to the plaintiff the sum of $22,500. Ex. W-1. (Indeed, in his post-trial memorandum, at 4, the debtor acknowledges the existence of the debt and is willing to pay $9,000 towards that claim.)  While the manner in which the debtor was to fulfill this obligation has not been effectuated, that disagreement does not extinguish the debtor's obligation to the plaintiff.  As the plaintiff's claim is determined to be nondischargeable, the parties can request that the state court resolve the QDRO issue.

[6]Debtor's Schedules and Statement of Financial Affairs were not submitted into evidence.  The plaintiff, however, did not challenge the debtor's assertion on this point.

5

After his bankruptcy case was closed on August 21, 2003, the debtor withdrew and transferred $13,500 from the First Union account.[7] Currently, only $9,000 remains in the account. The debtor explained that $4,000 from the account was paid to his attorneys; another $9,500 was used to pay unspecified "expenses."

The debtor is an attorney specializing in personal injury law. As I noted above, he earned approximately $160,000 per year as a law firm employee until that employment ceased. He then received unemployment compensation for a period of time, and thereafter obtained his current position at another firm, where he earns a base salary of $65,208, Ex. R-A, plus an annual bonus of about $20,000.[8] The debtor uses no credit cards and owns neither an automobile nor real estate.

Mrs. Fontecchio testified that she is disabled and awaiting a liver transplant. Her sole income is derived from social security disability benefits, and she stated that she

---

[7] The debtor testified that when his bankruptcy case was closed, he considered his obligation to the plaintiff discharged. The discharge order, however, Official Form 18, contains an explanation of the scope of the discharge, and includes a statement that alimony, maintenance and support are nondischargeable.

[8] When he first testified, the debtor explained that, in his present job, he receives about $60,000 in annual salary plus annual bonuses aggregating about $25,000. He later testified that his annual bonus in 2004 was $14,000 and his 2003 bonus was $15,000 to $16,000. No tax returns or other verification was offered. He later offered an income and expense statement, Ex. R-A, listing his bonus at only $10,000, but his annual salary was slightly more than $65,000.

The debtor provided no documents to corroborate any information about his bonus income or annual income. In reviewing his proferred income and expense statement, Ex. R-A, I note that the disclosed $10,000 bonus figure appears to simply balance his reported wages and expenses. In considering all of the evidence regarding his total income, I conclude that it is more likely that his annual salary is about $65,000 and, as he initially testified without hesitation, his total annual compensation is about $85,000. Thus, his bonus income would be approximately $20,000 per annum.

6

also borrows money from her friends. The record contains no evidence regarding her annual income, annual expenses, assets or liabilities.

## II.

### A.

The sole issue in this proceeding is whether Mrs. Fontecchio's claim of $22,500, based upon the state court settlement included in the parties' divorce decree, is nondischargeable under either 11 U.S.C. § 523(a)(5) or (a)(15). These two paragraphs of section 523(a) provide, in relevant part, as follows:

> § 523. Exceptions to discharge.
>
> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> \*\*\*
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–
>
> \*\*\*
>
> > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;
>
> \*\*\*

7

> (15) not the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .

The leading decision in this circuit interpreting section 523(a)(5) is In re Gianakas, 917 F.2d 759 (3d Cir. 1990). In Gianakas, the appellate court set forth the following framework for determining whether an obligation is a nondischargeable claim within the scope of section 523(a)(5):

> We believe that whether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement. . . . That intent can best be found by examining three principal indicators. . . .
>
> First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary. . . . However, it is likely that "neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." In re Wisniewski, 109 B.R. 926, 929 (Bankr. E.D. Wis. 1990). Therefore, the parties and the state courts may not have focused on whether a particular obligation was to serve as support or as a property settlement unrelated to support. . . . As the Pennsylvania Superior Court noted, even an obligation designated as property settlement

8

> may be related to support because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution. . . .
>
> Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to which we must look to assist in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement. The fact that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support. . . .
>
> Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support.

Id., at 762-63 (citations omitted). The Third Circuit then applied these three factors in Gianakas and determined that the obligation owed by the debtor as part of a settlement agreement to pay a second mortgage on the former marital residence constituted a nondischargeable support obligation.

The necessity, under section 523(a)(5), to distinguish claims classified as alimony, maintenance or support from claims classified as in the nature of a property division arises because property division obligations are outside the scope of section 523(a)(5). Prior to the enactment of section 523(a)(15), all property division obligations were dischargeable. See, e.g., Cummings v. Cummings, 244 F.3d 1263, 1265 (11th Cir. 2001); In re Gianakas; Boyle v. Donovan, 724 F.2d 681, 683 (8th Cir. 1984); In re Jenkins, 94 B.R. 355, 357 (Bankr. E.D. Pa. 1988) ("a distinction exists by which obligations in the nature of support, alimony or maintenance are not dischargeable while

property settlement obligations are dischargeable"); Buccino v. Buccino, 397 Pa. Super. 241, 251 (1990).

It is well established that the ultimate burden of persuasion under section 523(a)(5) falls upon the party who seeks a determination of nondischargeability. Cummings v. Cummings, 244 F.3d at 1265; In re Gianakas, 917 F.2d at 761; Shirey v. Shirey, 1998 WL 107031, at * 3 (E.D. Pa. 1998). Thus, the plaintiff here, Mrs. Fontecchio, has the ultimate burden of persuasion on the classification issue, and must establish the debt's nondischargeability under section 523(a)(5). See, e.g., Matter of Long, 794 F.2d 928, 930 (4th Cir. 1986) (defendant in a suit seeking a declaratory judgment as to the dischargeability of a purported alimony obligation bore the burden of establishing nondischargeability under section 523(a)(5)); In re Luman, 238 B.R. 697 (Bankr. N.D. Ohio 1999); In re Melton, 238 B.R. 686 (Bankr. N.D. Ohio 1999); In re Leonard, 231 B.R. 884, 887 (E.D. Pa. 1999). Moreover, the standard of proof in nondischargeability disputes is the preponderance of the evidence standard. See Grogan v. Garner, 498 U.S. 279 (1991); In re Bilzerian, 153 F.3d 1278 (11th Cir. 1998); In re Graham, 973 F.2d 1089 (3d Cir. 1992); In re Luman.

B.

Application of the three Gianakas factors—(1) the language and substance of the parties' agreement in the context of the surrounding circumstances, using extrinsic evidence if necessary; (2) the parties' financial circumstances at the time of the settlement; and (3) the function served by the obligation at the time of the divorce or

settlement—is made difficult here by the paucity of the evidence and by the lack of any precise, written settlement agreement.

There was no evidence regarding the debtor's employment situation or Mrs. Fontecchio's financial circumstances at the time of the settlement hearing in April 2002, making a comparison of the parties' respective financial situations difficult. The plaintiff offered only a partial transcript of the April 3, 2002 hearing, rendering the exact context of the agreement uncertain. The relevant terms of the settlement orally placed on the record, and quoted earlier, addressed the disposition of marital property and marital debts. That fact, coupled with the plaintiff's agreement to withdraw any pending request for alimony pendente lite, suggests that this debt may have been incurred as part of an overall property settlement. I also note that the promised payment from the debtor is not altered in any way by Mrs. Fontecchio's future marital status or death, as may occur with support obligations. See generally Buccino v. Buccino, 397 Pa. Super. at 254.

Based upon the very limited evidence presented, I cannot conclude that the plaintiff has met her evidentiary burden of persuasion to demonstrate the existence of a support obligation. Thus, the $22,500 obligation is not rendered nondischargeable by virtue of section 523(a)(5). See In re Reines, 142 F.3d 970 (7th Cir. 1998) (lump sum award not in the nature of support), cert. denied sub nom. Kolodziej v. Reines, 525 U.S. 1068 (1999); In re Shea, 221 B.R. 491, 497-98 (Bankr. D. Minn. 1998) (the divorce obligation was intended to compensate the non-debtor spouse with her share of the marital property); Ackley v. Ackley, 187 B.R. 24 (N.D. Ga. 1995) (same).

Therefore, unless this obligation is made nondischargeable by section 523(a)(15), this prepetition debt will fall within the scope of the debtor's chapter 7

11

discharge.

### III.

One must then consider the application of section 523(a)(15) to the dischargeability of the debtor's obligation to Mrs. Fontecchio. This 1994 statutory amendment to the Bankruptcy Code renders nondischargeable certain obligations which fall outside the scope of section 523(a)(5). Thus, subsection 523(a)(15) covers obligations "not of a kind described in paragraph (5)" —viz, property divisions, see Flaccus, A Potpourri of Bankruptcy Changes: 1994 Bankruptcy Amendments, 47 Ark. L. Rev. 817, 830-31 (1994)—that are "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court . . . ." Such obligations will be held nondischargeable unless either of two circumstances arise: "the debtor does not have the ability to pay" or "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences" of discharge to the creditor. See, e.g., In re Leonard. As stated in In re Becker, 185 B.R. 567, 569 (Bankr. W.D. Mo. 1995):

> By its language, section 523(a)(15) sets up a rebuttable
> presumption that any property settlement obligation arising
> from a divorce is nondischargeable unless the debtor can
> prove one of two things [one of the two exceptions found in
> section 523(a)(15)(A) or (B)].

Accord, e.g., In re Sorah, 163 F.3d 397, 401 (6th Cir. 1998) ("In 1994, Congress amended § 523 to make most divorce-related obligations nondischargeable. See 11 U.S.C. § 523(a)(15). The amended section contains two exceptions: a debt is dischargeable (1) if

12

the debtor cannot afford to pay it, or (2) if the discharge benefits the debtor more than it harms the debtor's spouse and children"); In re Carroll, 187 B.R. 197, 200 (Bankr. S.D. Ohio 1995).

The non-debtor spouse has an initial evidentiary burden to demonstrate only that the obligation falls within the general scope of section 523(a)(15). Once that burden is met, the debtor has the ultimate burden of persuasion to establish either of the two exceptions to nondischargeability. See, e.g., In re Vitek, 93 Fed. Appx. 28, 30 (6th Cir. 2004); Matter of Crosswhite, 148 F.3d 879, 884-85 (7th Cir. 1998); In re Leonard, 231 B.R. at 888; In re Laddeck, 2001 WL 423026, at *6 (Bankr. E.D. Pa. 2001); In re Nazario, 228 B.R. 394, 398 (Bankr. W.D. Pa. 1999).

Here, Mrs. Fontecchio has met her initial burden of persuasion. The obligation at issue—the $22,500 lump sum payment due from the debtor's 401(k) account—clearly arose from the parties' divorce litigation and was expressly incorporated into the Divorce Decree. Exs. W-1; R-1. Therefore, it was "incurred by the debtor in the course of a divorce . . . [as well as] in connection with a . . . divorce decree . . . ." 11 U.S.C. § 523(a)(15); see, e.g., Matter of Gamble, 143 F.3d 223, 225 (5th Cir. 1998); In re Laddeck, 2001 WL 423026, at *6; In re Carney, 1999 WL 395373, at *3 (Bankr. E.D. Pa. 1999).

The remaining dispute between these parties involves whether the evidence demonstrates by a preponderance that either of the two exceptions to nondischargeability found in section 523(a)(15) have been established. See In re Vitek, 93 Fed. Appx. at 30.

Insofar as the first exception found in section 523(a)(15)(A) is concerned—the debtor's ability to repay this obligation—the evidence offered does not meet the

13

debtor's evidentiary burden. "Courts typically assess a debtor's ability to pay from the point of trial, not from the filing date or the entry of the dissolution decree." In re Shea, 221 B.R. at 499; accord, e.g., In re Konick, 236 B.R. 524, 529 (B.A.P. 1st Cir. 1999); In re Jodoin, 209 B.R. 132, 141-42 (B.A.P. 9th Cir. 1997). Moreover, "[t]he 'ability to pay' factor in Bankruptcy Code § 523(a)(15)(A) enables the bankruptcy court to consider the present and future prospects for repayment from [the debtor's] expendable property, including any assets, previously acquired in contravention of the divorce court injunction, which remain in [the debtor's] possession, . . . or from [the debtor's] disposable income, including future wages." Davis v. Cox, 356 F.3d 76, 96-97 (1st Cir. 2004).

In terms of his income, the debtor, a practicing attorney, presently earns about $85,000 per year, or an average of about $7,000 per month. He has no dependents to support, no car or mortgage obligations, no educational expenses. Ex. R-A. Without including his bonus income, the debtor discloses net weekly income of $856.50, or annual net income of $44,538. Ex. R-A. He claims his annual expenses are $52,237, Ex. R-A, but those expenses include $100 per week (or $5,200 per year) for "entertainment,"[9] $100 per month (or $1,200 per year) paid to his barber, $208 per month (or $2,500 per year) for clothing, and $500 per month (or $6,000 per year) in "legal fees" (presumably fees to contest in state court his wife's attempt to collect her property settlement). Id. Not only should those four expenses be discounted to some degree, see, e.g., In re Erd, 282 B.R. 620, 625-26 (Bankr. N.D. Ohio 2002); In re Feldmann, 220 B.R. 138, 145 (Bankr. N.D.

---

[9]This expense is in addition to paying $125 per week for food for one person. The food expense likely includes some restaurant meals.

Ga. 1998), but one must also consider the annual bonuses of $20,000 and the $9,000 remaining unspent from the debtor's former 401(k) account.[10]

Thus, based upon this evidentiary record, I cannot conclude that the debtor has met his burden of persuasion on the exception provided by section 523(a)(15)(A) to demonstrate that he cannot afford to repay the $22,500 obligation owing to his former spouse. See In re Myrvang, 232 F.3d 1116, 1122 (9th Cir. 2000) (computing a debtor's ability to repay a property settlement obligation over a five-year period was not erroneous); In re O'Shaughnessy, 301 B.R. 24, 29-32 (Bankr. N.D. Iowa 2003).

In addition, "[s]ection 523(a)(15)(B) contains a second possible exception to nondischargeability: a balancing test that allows discharge of a marital dissolution debt if discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequence to a spouse, former spouse, or child of a debtor." In re Patterson, 132 F.3d 33 (Table), 1997 WL 745501, at *3 (6th Cir. 1997).

This balancing test requires a court to "review[] the financial statuses of the debtor and the creditor and compar[e] their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the former spouse and/or children would suffer as a result of a discharge." Id., 1997 WL 745501, at *3; see, e.g., In re Smither, 194 B.R. 102, 110 (Bankr. W.D. Ky. 1996). "If, after making this analysis, the debtor's standard of living will be greater than or approximately equal to the creditor's if the debt is not discharged, then the debt should be nondischargeable under

---

[10]Indeed, in his post-trial memorandum, the debtor concedes his ability to repay $9,000 of the outstanding obligation to Mrs. Fontecchio. Debtor's Memorandum, at 4. In essence, I find unsupported by the evidence his assertion that he cannot afford to repay the balance of $13,500 over a reasonable period of time, given his income and reasonable expenses.

15

the 523(a)(15)(B) test. However, if the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged, then the debt should be discharged under 11 U.S.C. § 523(a)(15)(B)." Id., 194 B.R. at 111; see In re Melton, 238 B.R. 686, 696 (Bankr. N.D. Ohio 1999).[11]

From the limited evidence presented, the debtor has not met his evidentiary burden regarding the balancing test.

First, the only evidence regarding Mrs. Fontecchio's income and expenses reflects that she is disabled, receives social security benefits, and needs to borrow funds to meet expenses. No evidence was presented concerning her assets or liabilities. See generally In re Marsh, 257 B.R. 879, 882 (Bankr. W.D. Tenn. 2000) (the debtor failed to establish the exception in § 523(a)(15)(B), where "no one at trial" proved the plaintiff's income, expenses, debts or assets).

Second, in contrast to the plaintiff's known circumstances, the debtor is a practicing attorney, earning about $85,000, with $9,000 cash on hand, and with expenses less than his annual income. There is insufficient evidence to conclude that the harm suffered by the debtor, were discharge denied, would exceed that suffered by the plaintiff, were discharge granted. See In re Tielsch, 299 B.R. 114, 117 (Bankr. W.D. Pa. 2003):

> As for § 523(a)(15)(B), the Court concludes, in particular, that the benefit to the Debtor that would result from a discharge of Collins' Alimony Award would not outweigh the detriment which Collins would suffer from such discharge. The Court supports the immediately preceding conclusion by finding that (a) Collins is presently unemployed, (b) Collins' future employment prospects are relatively slim, particularly given that she has been diagnosed as suffering from breast

---

[11] One court described section 523(a)(15)(B) as involving a "balance of the equities." In re Myrvang, 232 F.3d at 1121.

> cancer, and (c) the Debtor, for the reasons set forth above, possesses the capability of satisfying Collins' Alimony Award if the Debtor fully employs himself. . . .

The debtor may have to reduce his entertainment, clothing, and personal grooming expenses, and use some of his bonus income to repay this debt. But one cannot conclude on this evidentiary record that such reduction in expenses and expenditures would be inequitable as compared with the plaintiff's present circumstances, were her claim found to be dischargeable.

Accordingly, as the debtor has not established either statutory exception under section 523(a)(15), an order shall be entered determining nondischargeable his obligation to the plaintiff.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| OSVALDO FONTECCHIO | : | |
| Debtor | : | Bankruptcy No. 03-14838F |
| JANIS FONTECCHIO | : | |
| Plaintiff | : | |
| v. | : | |
| OSVALDO FONTECCHIO | : | |
| Defendant | : | Adversary No. 04-0490 |

............................................................

ORDER

............................................................

AND NOW, this 10th day of May 2005, for the reasons stated in the accompanying memorandum, it is hereby ordered that judgment is entered in favor of the plaintiff and against the defendant, and the plaintiff's prepetition claim is rendered nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Janis Fontecchio
620 Vankirk Street
Philadelphia, PA 19120

Mr. Osvaldo Fontecchio, Jr.
117 N 15th Street
Apartment 705
Philadelphia, PA 19102

Michael M. Gessner, Esq.
1528 Walnut Street
Suite 1401
Philadelphia, PA 19103

Malcolm W. Berkowitz, Esq.
1521 Spring Garden Street
Philadelphia, PA 19130